TERESA WINGATE, as Adm'r of the Estate of Brian Charles Valle, Deceased, *et al.*, Plaintiffs-Appellants, v. CAMELOT SWIM CLUB, INC., *et al.*, Defendants-Appellees.

Third District   No. 3—89—0061

Opinion filed February 6, 1990.

Duane Thompson and Raymond J. Conklin, both of Braud/Warner, Ltd., of Rock Island (Michael J. Warner, of counsel), for appellant.

Calif, Harper, Fox, Dailey & Slover, of Moline (Dennis R. Fox and Robert T. Park, of counsel), for appellee Camelot Swim Club, Inc.

Kenneth M. Collinson, of Collinson & Darrow, of Milan, for appellee Sue Villagomez.

Samuel S. McHard, of Katz, McAndrews, Durkee, Balch & Lefstein, P.C., of Rock Island, for appellee Rachelle Stephens.

JUSTICE WOMBACHER delivered the opinion of the court:

Plaintiff Teresa Wingate, as administrator of the estates of her two minor children and individually, brought a wrongful death action in the circuit court of Rock Island County. The trial court granted defendants' motions for summary judgment and denied the plaintiff's motion for leave to file a fourth amended complaint. Plaintiff appeals.

The record reveals the following information. On December 21, 1982 three children, Brian Charles Valle, age five, Bobbie Jo Valle, age seven, and Vanna Roeung, age seven, drowned in a man-made duck pond owned by defendant Camelot Swim Club, Inc. (Camelot). At the time of the drowning, the Valle children were under the care and supervision of Rachelle Stephens (Stephens), who had been hired by Teresa Wingate to babysit the children. Stephens had delegated her responsibilities to Sue Villagomez (Villagomez).

On December 18, 1984, the plaintiff, as administrator of the estates of her two minor children and individually, filed an eight-count complaint against defendants Camelot, Stephens and Villagomez. On the same date Chai Tan, individually and as administrator of the estate of Vannna Roeung, filed a three-count complaint against Camelot.

The two actions were consolidated. Plaintiff's and Tan's initial complaints and two amended complaints were dismissed. Plaintiff and Tan filed a third amended complaint. On December 27, 1988, summary judgment was granted in favor of all defendants. Plaintiff filed a motion for leave to file her fourth amended complaint. The trial court denied this motion.

The plaintiff alone filed this appeal of the granting of summary judgment and the denial of the plaintiff's motion for leave to amend. Plaintiff raises three issues on appeal. Initially, plaintiff contends that the trial court erred in granting summary judgment in favor of defendant Camelot on counts I through IV of the third amended complaint.

■ We note at the outset that summary judgment is a drastic method of disposing of a case and should not be employed unless there is no issue of material fact and it is free from doubt that the moving party is entitled to judgment as a matter of law. *Murphy v. Urso* (1981), 88 Ill. 2d 444, 463-64, 430 N.E.2d 1079.

■ ■ We are of the opinion that summary judgment was properly granted in favor of defendant Camelot, as it is apparent from an examination of relevant case law that Camelot did not owe a duty to plaintiff's decedents. The decision of our supreme court in *Cope v. Doe* (1984), 102 Ill. 2d 278, 464 N.E.2d 1023, is directly on point and resolves this issue.

In *Cope* the court held that a retention pond, partially covered with ice and with a large portion of open water clearly visible, was not a dangerous condition which presented a peril not appreciated by the seven-year-old decedent. (102 Ill. 2d at 289.) Therefore, the court found that the defendant pond owner owed no duty to plaintiff's decedent as a matter of law.

The tragic facts of the instant case parallel those of *Cope*. Like *Cope*, the instant case involved a man-made pond. The pond was partially frozen, with an open area of water. The victim in *Cope* was seven years old. In the instant case the victims were ages five and seven.

Although it is true that one of the victims here was five years old, we believe the language of the court in *Cope* controls: "The law then is that forseeability of harm to the child is the test for assessing liability; but there can be no recovery for injuries caused by a danger found to be obvious." (102 Ill. 2d at 286.) The court in *Cope* reaffirmed its holding in *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 944, by stating: "There are many dangers, such as those of fire and *water*, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood by any child of an age to be allowed at large." (Emphasis in original.) (102 Ill. 2d at 286-87.) We are of the opinion that the five-year-old victim was "of an age to be allowed at large" and therefore should have been aware of this obvious risk.

Plaintiff concedes that *Cope* represents the current law in Illinois and is controlling in regard to this issue. Plaintiff contends that in light of the circumstances of this particular case, *Cope* should be reexamined and modified. Plaintiff also contends that the risk of drowning in an open body of water is materially different from the risks and hazards presented by an ice-covered or partially ice-covered body of water.

We cannot agree that the risk of drowning in an open body of wa-

ter is materially different from the risks and hazards presented by an ice-covered or partially ice-covered body of water. Open bodies of water have dangers such as sudden drop-offs and undercurrents. Ice-covered bodies of water have dangers such as thin areas or weak spots. The fact is that bodies of water, frozen or otherwise, constitute an obvious hazard that children of an age to be at large should be aware of and appreciate. Compare *Pasierb v. Hanover Park Park District* (1981), 103 Ill. App. 3d 806, 431 N.E.2d 1218 (child was not aware of where frozen creek began and shore ended due to snow cover).

We also note that a 1984 appellate court case, *Weber v. Village of Carol Stream* (1984), 129 Ill. App. 3d 628, 472 N.E.2d 1203, affirmed a trial court's granting of summary judgment to defendant-owners of a frozen retention pond in which a nine-year-old boy drowned. The court found that, as a matter of law, the defendants didn't owe a duty to the plaintiff's decedent. It is for these reasons that we decline to alter from the clear guidelines of *Cope*.

The second issue raised by plaintiff contends that the trial court erred in granting summary judgment in favor of defendants Stephens and Villagomez.

■ It is fundamental that there can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff. The question of duty is a question of law to be determined by the court. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538.) Where there is no duty established, summary judgment should be allowed.

■ Plaintiff concedes that defendants Stephens and Villagomez were not under a duty to constantly supervise the children. Plaintiff alleges, however, that defendants Stephens and Villagomez had a duty to warn plaintiff's decedents about the pond and the hazards of being out on the ice. We cannot agree. We have indicated that the partially ice-covered pond was an obvious danger, and as such, was something the children should have been aware of without a warning from the babysitters. We affirm the trial court on this issue.

The last issue raised by the plaintiff contends that the trial court erred by denying the plaintiff's motion for leave to file a fourth amended complaint.

■ Section 2—1005(g) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(g)) provides: "Before or after the entry of summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." The court in *Siebert v. Continental Oil Co.* (1987), 161 Ill. App. 3d 891, 515 N.E.2d 728, addressed the language of this paragraph. In *Siebert* the trial court de-

nied the plaintiff's motion for leave to file a fourth amended complaint. The court examined the language of the section and found that the "just and reasonable" terms of section 2—1005(g) mirrors the language employed in section 2—616(a) (Ill. Rev. Stat. 1987, ch. 110, par. 2—616(a)), which has been interpreted as requiring the trial court to permit amendment if it will further the ends of justice. *Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294, 303, 484 N.E.2d 841; *First National Bank & Trust Co. v. Sousanes* (1978), 66 Ill. App. 3d 394, 396, 384 N.E.2d 30.

The court in *Siebert,* quoting from *Kupianen v. Graham* (1982), 107 Ill. App. 3d 373, 437 N.E.2d 774, stated:

> "The court in *Kupianen* delineated the relevant factors which should be considered in deciding whether the trial court properly exercised its discretion in denying amendment of the counterclaim: 'whether the proposed amendment would cure the defective pleading [citation]; whether other parties would sustain prejudice or surprise by virtue of the proposed amendment [citations]; the timeliness of the proposed amendment [citation]; and whether previous opportunities to amend the pleadings could be identified. [Citation.] 107 Ill. App. 3d 373, 377, 437 N.E.2d 774." *Siebert,* 161 Ill. App. 3d at 895.

In the case at bar, the trial judge determined that the proposed amendment failed to cure the defective pleading. Plaintiff had four years in which to amend her complaint. Six years had elapsed since the accident. We feel that the trial judge did not abuse his discretion in denying the plaintiff's leave to file her fourth amended complaint and affirm the court on this issue.

The judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

SCOTT and STOUDER, JJ., concur.